### SIMPSON v. GERKEN.

(Supreme Court, Appellate Division, First Department. June 11, 1897.)

1. NEGLIGENCE—QUESTION FOR JURY.

    Men were on a passenger elevator in defendant's 14-story building, painting above the sixth floor, and the elevator was moved as their work required. At the same time, S. and others were putting window frames in the elevator shaft at the sixth floor; and, by direction of their foreman, they made a platform by extending planks through the elevator door, needlessly placing the planks in a loop of a rope which had one end attached

to the bottom of the elevator, and the other to the shaft at the eighth story. Neither F., who operated the elevator, defendant, nor the superintendent of the building, knew of the manner in which the platform was made, and such foreman merely told the superintendent that he was going to do the work that day. The elevator was moved upward so that the rope caught the plank, killing S. F. testified that such foreman told him that morning that the work was about to be done, and not to move the elevator down on the men. *Held,* that there was nothing to go to the jury on the question of the negligence of F. or defendant.

**2. CONTRIBUTORY NEGLIGENCE.**
Deceased and his associates were guilty of contributory negligence in placing the planks in the loop of the rope.

Appeal from trial term.

Action by Janet Simpson, administratix of the estate of Thomas Simpson, deceased, against Frederick Gerken, for the death of plaintiff's intestate, caused by defendant's negligence. From a judgment dismissing the complaint, entered on a verdict directed by the court in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, O'BRIEN, IN-GRAHAM, and PARKER, JJ.

William O. Campbell, for appellant.

Perry D. Trafford, for respondent.

RUMSEY, J. The defendant, at the time of the happening of the facts set out in the complaint, was the owner of a large building situate at the corner of Chambers street and West Broadway, known as the "Gerken Building," consisting of about 14 stories, which was let out to tenants for office purposes. The defendant operated an elevator in connection with the building for the carriage of passengers. In the month of April, 1896, the plaintiff's intestate, with other workmen, was engaged in putting window frames in the elevator shaft in that building. They were at work upon the sixth story. To do the work, it was necessary that they should have a scaffold upon which to stand within the elevator. While the carpenters were at work putting in these window frames, painters were also at work in the elevator in the stories above. The painters had been taken upon the top of the elevator, which was moved from time to time sufficiently to enable them to work at different heights on the inside of the shaft. The elevator, at the time of the death of the plaintiff's intestate, was at the eleventh floor. To the bottom of the elevator, near the center, was attached one end of a rope, the other end of which was fastened into the elevator shaft at the eighth story; so that, as the elevator stood at the eleventh story, the bight of the rope formed a loop hanging down below the place where the plaintiff's intestate was at work. The plaintiff's intestate, with his companions, had made a platform by extending plank through the door of the elevator from the floor to a shelf on the back of the shaft. These planks were put in the loop formed by the hanging rope. As they stood upon the plank, the elevator was hoisted and the loop caught in the plank, upset the platform, and the plaintiff's intestate fell to the bottom of the shaft, receiving injuries which caused his death. Upon the trial of this action, brought to recover damages

against the owner of the building for alleged negligence in permitting the elevator to be moved when the plaintiff's intestate was at work in the shaft, the complaint was dismissed; and, from the judgment entered upon the order dismissing the complaint, this appeal is taken.

There was no pretense that the defendant himself was present at the building at any time, or that he personally was guilty of any negligent act which tended to bring about the killing of the plaintiff's intestate. The negligence relied upon was claimed to be that of Dunscomb, who was superintendent of the building under the defendant, or of Flannagan, the elevator man, whose act in moving the elevator upward was the immediate cause of the fall of the plaintiff's intestate. It appeared that the foreman of the gang of men in which Simpson, the intestate, was working, directed the building of the platform in the manner in which it was built. He had told Dunscomb, the superintendent, that he proposed to do this work in the shaft on that day, but there was no claim that Dunscomb had any knowledge that the work was to be done at the particular time, and no claim that he was requested to give any directions with regard to the movement of the elevator, or to do any act by way of the protection of the workmen in the shaft. All the proof on that subject is that Dunscomb was told by the foreman that he proposed to do the work on Saturday, to which he replied, "All right." Flannagan, the elevator man, who was sworn as a witness in behalf of the plaintiff, testified that he was told by the foreman that the work was about to be done that morning, and he was asked not to move the elevator down on top of the men who would be at work in the shaft below. His reply was that he would not move it down, and it is in proof that the elevator was not moved down, but that the accident was caused by moving it up, so that the loop caught in the planks which had been put through it for Simpson to stand upon. There is no claim that Flannagan knew that this platform had been made by putting the planks through the loop, and it is quite clear that there was no necessity of so doing to make the platform, because the rope, which was a light one, might easily have been pushed to one side, so as to pass by the planks as the elevator moved up, and run no risk of catching them, and tipping over the platform. That this was not done was not known to Flannagan, and there is no pretense that he had any information that the platform would be so made as to render it dangerous for him to move the elevator up. In fact, in view of the conversation which was had, that he should not move the elevator down on top of the men working underneath, it is quite clear that he had no reason to suppose that there would be any objection to his hoisting the elevator whenever there was any reason to do so. We are unable to discover in the evidence any act on the part of Flannagan or Dunscomb which can be construed to be negligent so far as the men working in the shaft were concerned. We are quite clear, also, that the workmen themselves were guilty of contributory negligence in placing the planks as they did in the loop of the rope. It was clearly unnecessary so to do, and the thing which occurred was precisely the thing which would have been ex-

pected to occur if the elevator had been hoisted. There was no reason on their part, so far as the evidence shows, to suppose that it would not be hoisted whenever it was necessary to do so, and the plainest dictates of prudence should have suggested to them that it was not safe to put these planks through the bight of the rope, and thus subject themselves to the danger of being upset in case the elevator was hoisted. There is nothing in any of the exceptions to the ruling of the court upon evidence which could harm the plaintiff in view of the undisputed facts. Upon the evidence, as it is disclosed by the record, it is very clear that not only was there no negligence on the part of the defendant, but that the persons building the scaffold, who were the co-employés of plaintiff's intestate, were guilty of gross carelessness.

For these reasons, the order of the court dismissing the complaint was correct, and the judgment should be affirmed, with costs. All concur.